**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company,** | ) | CASE NO. _____ |
| | ) | |
| **and** | ) | |
| | ) | **COMPLAINT FOR PATENT** |
| **RARE BREED TRIGGERS, INC., a Texas corporation,** | ) | **INFRINGEMENT** |
| | ) | |
| Plaintiffs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| **Combat Armory LLC, a Michigan Limited Liability Company,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse Combat Armory LLC ("Defendant") of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, 10,514,223, 11,724,003, 12,036,336, 12,274,807, and 12,636,403; infringing Plaintiff Rare Breed's trademark rights; and engaging in unfair competition as follows:

## PARTIES

1.     ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.     Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

1

3. Upon information and belief, Combat Armory LLC is a limited liability company organized under the laws of Michigan with an address of 23527 Ford Road, Dearborn, Michigan 48128.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 284-85; trademark infringement; false designation of origin; and unfair competition under 15 U.S.C. §§ 1114 and 1125(a).

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

6. Personal jurisdiction over Defendant is proper in this District because the Defendant resides in and has a regular and established place of business in this District.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendant resides in or has committed acts of infringement and has a regular and established place of business in this District.

## BACKGROUND

8. This lawsuit asserts (i) direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 12,529,538 ("the '538 Patent"), 12,578,159 ("the '159 Patent"), 10,514,223 ("the '223 Patent"), 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), 12,274,807 ("the '807 Patent), and 12,636,403 ("the '403 Patent) (together, "the Asserted Patents"); and (ii) trademark infringement, false designation of origin, and unfair competition with regard to Rare Breed's well-known FRT® trademark.

9. The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

10. The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

11. The '538 Patent was lawfully and properly issued by the United States Patent and Trademark Office on January 20, 2026. Each and every claim of the '538 Patent is valid and enforceable. A true and correct copy of the '538 Patent is attached as Exhibit C.

12. The '159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the '159 Patent is valid and enforceable. A true and correct copy of the '159 Patent is attached as Exhibit D.

13. The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019. Each and every claim of the '223 Patent is valid and enforceable. A true and correct copy of the '223 Patent is attached as Exhibit E.

14. The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023. Each and every claim of the '003 Patent is valid and enforceable. A true and correct copy of the '003 Patent is attached as Exhibit F.

15. The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '336 Patent is valid and enforceable. A true and correct copy of the '336 Patent is attached as Exhibit G.

16.     The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025. Each and every claim of the '807 Patent is valid and enforceable. A true and correct copy of the '807 Patent is attached as Exhibit H.

17.     The '403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26. 2026. Each and every claim of the '403 Patent is valid and enforceable. A true and correct copy of the '403 Patent is attached as Exhibit I.

18.     ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

19.     Rare Breed is also the owner of the exclusive license of all substantial rights in trademark FRT and variations thereon ("the FRT Marks"), including the right to enforce the marks against infringers. Since at least 2020, the FRT mark has been used by Rare Breed to identify a unique trigger system for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT trademark has come to be uniquely identified with Rare Breed and a valuable identifier of Rare Breed's products. In addition to strong common law rights in the FRT trademark, Rare Breed has exclusive rights to enforce the following federally registered trademarks and pending applications:

| Mark | Goods | App. no. | Reg. no. | App. date | Reg. date |
|------|-------|----------|----------|-----------|-----------|
| FRT | triggers for firearms | 97248519 | 8187914 | 2022-02-01 | 2026-03-24 |
| FRT-15 | triggers for firearms | 97245949 | 7004418 | 2022-01-31 | 2023-03-21 |
| FRT-22 | triggers for firearms | 97248530 | 8232406 | 2022-02-01 | 2026-04-28 |
| FRT-47 | triggers for firearms | 97248528 | 8232405 | 2022-02-01 | 2026-04-28 |
| FRT-MR3 | triggers for firearms | 99714625 | | 2026-03-20 | |

4

| FRT-RD3 | triggers for firearms | 99714703 | | 2026-03-20 | |
| FRT-15L3 | triggers for firearms | 98715335 | 8225451 | 2024-08-24 | 2026-04-21 |

Together, Rare Breed's common law rights in and federal trademark registrations and pending applications are referred to as the "FRT Marks."

20.     Rare Breed is the exclusive licensee of the Asserted Patents and all substantial the FRT Marks, including the exclusive right to enforce the FRT Marks.

21.     Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

22.     Upon information and belief, Defendant has committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

**THE INVENTIONS**

23.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces

pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

24. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

25. In contrast, in what Plaintiffs have coined a "forced reset trigger" mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

26. The '247 and '159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a "forced reset" semiautomatic mode and uses a cam, rotated by cycling of the action, to move the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

27. The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward

movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

28. The '538 Patent provides a safety mechanism for a firearm that employs a cam selector, a lever, and a trigger. The cam selector contains multiple recesses and is configured to operate between a first mode, a second mode, and a third mode. In the first mode, a portion of the trigger referred to as a first trigger tail portion is movable within the first recess. In the second mode, the first trigger tail portion is allowed to engage the second recess and be moved down by a cam portion of the second recess when the cam selector rotates. In the third mode, the cam selector is configured to prevent the trigger from being pulled.

29. The '223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

30. The '003 Patent, the '336 Patent, the '807 Patent, and the '403 Patent describe and claim a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

31. The claims of the patents define the scope of the patented inventions.

**THE INFRINGING DEVICES**

32.     On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents, including the following (collectively, the "Infringing Devices"):

I.     **The Super Safety**

33.     On information and belief, Defendant is currently making, using, selling, and/or offering for sale a (3-Position) "Super Safety" ("the Super Safety"), which embodies the technology claimed in at least the '247, '784, '538, '159, and '403 Patents.

34.     On information and belief, Defendant is making, using, selling, and/or offering for sale the Super Safety via the website https://www.combatarmory.com/frt-super-safety/, in multiple variants:

a.   A partial kit, which includes at minimum the cam and cam lever components, and may further include one or more additional components—when these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247, '784, '538, '159, and '403 Patents—and/or;

b.   A complete kit, which includes at minimum the cam and cam lever components and additional components (e.g., a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger); and/or

c.   A complete kit preinstalled in a receiver and/or complete firearm, which includes cam and cam lever components and additional components (e.g., a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger) preinstalled in an AR-pattern receiver.

8

35.     Exemplary photographs are shown below:



**Super Safety Straight FLAT Face Trigger Kit D2 Steel – Active Reset Trigger For AR-15 FRT**

Was: $199.99

**Sale: $99.99**

OUT OF STOCK



**Super Safety Curved Face Trigger Kit D2 Steel – Active Reset Trigger For AR-15 FRT**

Was: $199.99

**Sale: $99.99**

OUT OF STOCK



**Super Safety FLAT Face Trigger Kit D2 Steel – Active Reset Trigger For AR-15 FRT**

Was: $199.99

**Sale: $99.99**

OUT OF STOCK

9

36. The Super Safety can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

II. **The Atrius Selector**

37. On information and belief, Defendant is currently making, using, selling, and/or offering for sale a (3-Position) "Atrius Forced Reset Selector" ("the Atrius Selector"), which embodies the technology claimed in at least the '247, '784, '159, and '403 Patents.

38. On information and belief, Defendant is making, using, selling, and/or offering for sale the Atrius Selector via the website https://www.combatarmory.com/frt-super-safety/, in multiple variants:

   a. As a standalone product; and/or

   a. In conjunction with separate trigger mechanism parts; and/or

   b. Pre-installed in a receiver and/or complete firearm.

39. Exemplary photographs are shown below:





**Atrius G-LEVER Ambidextrous Forced Reset Selector-Super Selektor**

Was: $299.99

Sale: $269.99

**SALE**



**Atrius Forced Reset Selector - Super Selektor & Odin Works HFRT — The All-in-One Buffer & Tube System Combo**

Was: $329.99

Sale: $199.99

11



**Atrius Forced Reset Selector Ambi – Super Selektor**

Was: $299.00
Sale: $189.99



**Atrius Forced Reset Selector – Super Selektor**

Was: $249.99
Sale: $159.99

40.     The Atrius Selector can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by rotating the safety selector between positions.

III.   **The Disruptor**

41.     On information and belief, Defendant is currently making, using, selling, and/or offering for sale a (3-Position) Partisan Disruptor ("the Disruptor"), which embodies the technology claimed in at least the '223, '003, '336, '807, and '403 Patents.

42.     On information and belief, Defendant is making, using, selling, and/or offering for sale the Disruptor via the website https://www.combatarmory.com/frt-super-safety/, in multiple variants:

      a.   As a standalone product; and/or

      b.   Pre-installed in a receiver and/or complete firearm.

43.     Exemplary photographs are shown below:

14



**Partisan Triggers Disruptor AR-15
FRT 3 Position & Odin Works HFRT —
The All-in-One Buffer & Tube System
Combo**

Was: $439.99

Sale: $299.99



**Partisan Triggers Disruptor AR-15 FRT 3 Position Drop In Forced Reset Trigger in Green**

Was: $349.99
Sale: $274.99

**Partisan Triggers Disruptor AR-15 FRT 3 Position Drop In Forced Reset Trigger**

Was: $349.99
Sale: $274.99

44.     The Disruptor also operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector between positions.

45.     When the Disruptor operates in the forced reset mode, the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar/member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

46.     When in the standard semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer

from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

47.     When in the forced reset semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

## IV.     The ARC-Fire

48.     On information and belief, Defendant is currently making, using, selling, and/or offering for sale a (3-Position) "ARC-Fire," which embodies the technology claimed in at least the '247, '784, '159, and '403 Patents.

49.     On information and belief, Defendant is making, using, selling, and/or offering for sale the ARC-Fire via the website https://www.combatarmory.com/frt-super-safety/, in multiple variants:

    a.   As a standalone product; and/or

    c.   In conjunction with separate trigger mechanism parts; and/or

    d.   Pre-installed in a receiver and/or complete firearm.

50.     Exemplary photographs are shown below:



**ARC-Fire Trigger V2 – Non-Ambi Kit (0° – 90° – 180°)**

Was: $249.99
Sale: $159.99



**ARC-Fire Trigger V2 – Ambi Kit (0° – 90° – 180°)**

Was: $299.99
Sale: $199.99



**ARC-Fire Trigger V2 – Ambi Kit (0° – 45° – 90°)**

Was: $299.99
Sale: $199.99



**ARC-Fire Trigger V2 – Ambi Kit (0° – 45° – 180°)**

Was: $299.99
Sale: $199.99



**ARC-Fire Trigger - Ambi Kit**

~~Was: $299.99~~
**Sale: $139.99**

51.     The ARC-Fire can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by rotating the safety selector between positions.

**INFRINGEMENT OF THE FRT MARKS**

52.     On information and belief, Defendant is distributing, advertising, and/or selling products that do not originate with Rare Breed but that nonetheless bear or are promoted in association with the FRT Marks.

53.     Defendant is falsely associating its products with Rare Breed's well-known FRT Marks.

54.     Defendant is advertising its product as "FRT" as shown at: https://www.combatarmory.com/frt-super-safety/. Exemplary images are shown below:



Glock Barrels   Glock Slides   Glock Internal Parts ⌄   AR-15/AR-10/AR9 ⌄   Firearms/Lowers   Sig Barrels   FRT / Super Safety   Hot Deals   Taurus TX22   Ruger RXM

Smith & Wesson M&P Barrels

Home  /  FRT / Super Safety

**Categories**                          **FRT / Super Safety**



Odin Works

Odin Works AR15 FRT Buffer OS-BS-HFRT-AR15 (6.2oz) With Spring Included

Was: $89.99

Sale: $79.99



Partisan Triggers Disruptor AR-15 FRT 3 Position Drop In Forced Reset Trigger in Green

Was: $349.99

Sale: $274.99



Partisan Triggers Disruptor AR-15 FRT 3 Position Drop In Forced Reset Trigger

Was: $349.99

Sale: $274.99



Odin Works

Odin Works AR9 FRT Buffer OS-BS-HFRT-9 (8.6 oz) With Spring Included

Was: $89.99

Sale: $79.99

19



55.     Despite Defendant's marketing, Defendant's product is **not** one of Rare Breed's FRT products.

56.     Defendant's unauthorized use of the FRT Marks to identify and promote its products is likely to mislead consumers into falsely believing that Defendant's products are in fact Rare Breed's products, or are endorsed by or associated with Rare Breed.

20

57.     The only reason Defendant would use the FRT Marks in connection with its products is to trade on the goodwill Rare Breed has developed in the FRT Marks, and thus Defendant's conduct is willful.

## COUNT I – INFRINGEMENT OF THE '247 PATENT

58.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

59.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the Super Safety, Atrius Selector, and ARC-Fire.

60.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents.

61.     An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 15 of the '247 Patent is illustrated in the chart attached as Exhibit K.

62.     An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 15 of the '247 Patent is illustrated in the chart attached as Exhibit L.

63.     An exemplary comparison of the ARC-Fire, when assembled and used as intended, with claim 15 of the '247 Patent is illustrated in the chart attached as Exhibit M.

64.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '247 patent.

Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety, Atrius Selector, and ARC-Fire. One example of this is the promotional material found on Defendant's website  https://www.combatarmory.com/frt-super-safety/ that informs customers to install the Infringing Devices into an AR15:

Description

Super Safety FLAT Face Trigger Kit D2 Steel – Active Reset Trigger For AR-15 FRT

You Get

- Mil-spec Curved Face Trigger (8620 hardened steel) – already cut/milled.
- "Trigger aesthetic style" subject to change based on availability but dimensions function and feel is same as image. Meaning flat trigger orders will get flat triggers. Curved will get Curved.
- Safety Cam (D2 Tool steel)
- Magic Lever (D2 Tool steel)
- Safety Detent Pin

You May Need Based On Your Set Up

- Full Auto rated BCG.
- Typically a mil-spec H2 buffer. Varies based on gas length and spring
- Proper setup of the Super Safety system requires attention to buffer selection, receiver geometry, and bolt carrier design. When correctly configured, the system supports full cyclic reliability and improved performance.

Description

Atrius Forced Reset Selector - Super Selektor Trigger

This item can be back ordered if needed.

The most robust solution on the market that enables the user to have 3 positions; SAFE, SEMI (Traditional) and FULL-SEMI. This Forced Reset Selector (FRS) is compatible with mil-spec AR15 (chambered in .223/5.56/.300 BLK) fire control groups and no modifications required. The Atrius FORCED RESET SELECTOR (Single) isn't just a safety, it's an advantage.

HOW TO ENSURE RELIABLE OPERATION:

- This product was designed for mil-spec triggers that do not have a relief cut (that means the rear of the bottom half of the trigger - not the hammer, must be completely squared off. No u-notch.)
- Your AR-15 lower receiver must have an FA Pocket OR Low Shelf
- You must use an FA bolt carrier group
- It is strongly recommended to only use an H2 or H3 buffer weight

22

**Introducing the AS Designs ARC-Fire V2 Ambi Kit (0° - 45° - 90°) Active Reset Clutch Technology for Maximum Firepower**

V2 DIFFERENCES

- DIFFERENT SELECTOR ORIENTATIONS AVAILABLE

- SMOOTHER DETENT TRACK

- LARGER CAM SURFACES

- COMES STOCK WITH MILSPEC SELECTORS (PICTURED)

We're proud to unveil the ARC-Fire V2, the latest innovation from AS Designs – a cutting-edge ambidextrous selector trigger system featuring our patent-pending Active Reset Clutch (ARC) technology. Designed to dramatically increase your firearm's rate of fire without compromising control or compliance, the ARC-Fire forces the trigger to reset immediately after each shot, enabling rapid, precise follow-up shots - with one round per action of the trigger, every time.

**Built for Speed. Designed for Control.**

*Multi-Platform Compatibility:* Engineered to support over 10 of the most widely used firearm platforms, with more on the horizon. (AR15, JAKL, MP5, MCX, MPX, SCAR, BRN-180, G3, AP53, UMP, STRIBOG, DISSENT, and more to be added soon)

*Ambidextrous Selector:* Fully ambi design provides fast, intuitive access for both right- and left-handed shooters.

*Three-Position Control:* Selector positions include Safe, Semi, and ARC, putting enhanced speed and performance at your fingertips.

Description

Partisan Triggers Disruptor AR-15 FRT 3 Position Drop In Forced Reset Trigger

Now Know As The Triggered Company!

The **Partisan Disruptor** is a forced reset trigger engineered for shooters who demand speed, precision, and reliability without complicated installation. Unlike a Super Safety, the Partisan Disruptor is a true, direct drop-in replacement trigger, requiring **no modification, gunsmithing, or fitting**. Installation is fast, straightforward, and hassle-free.

**UPC**: 083456001012

Designed with performance and control in mind, the Partisan Disruptor features a **three-position safety selector** with **Safe**, **Semi-Automatic**, and **Enhanced Semi-Automatic** modes. This allows shooters to tailor their shooting experience while maintaining consistent operation and dependable safety.

Whether you're building a duty-grade rifle or upgrading an existing platform, the Partisan Disruptor delivers a responsive, confident trigger feel backed by extensive durability testing.

65.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 15 of the '247 Patent.

66.     On information and belief, Defendant also contributes to the infringement of the '247 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Super Safety, Atrius Selector, and ARC-Fire, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '247 Patent.

23

67. Defendant has engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '247 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '247 Patent.

68. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

69. By its actions, Defendant's infringement of the '247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

70. By its actions, Defendant's infringement of the '247 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

71. Defendant's infringement of the '247 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

72. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

73. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

24

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – INFRINGEMENT OF THE '784 PATENT

74.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

75.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 patent. Such unlicensed products include the Super Safety, Atrius Selector, and ARC-Fire.

76.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

77.     An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart attached as Exhibit N.

78.     An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart attached as Exhibit O.

79.     An exemplary comparison of the ARC-Fire, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart attached as Exhibit P.

80.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '784 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate

25

direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety, Atrius Selector, and ARC-Fire while selling products. One example of this is the promotional material found on Defendant's website FRT / Super Safety - COMBAT ARMORY that informs customers to install the Infringing Devices into an AR15:

Description

Super Safety FLAT Face Trigger Kit D2 Steel – Active Reset Trigger For AR-15 FRT

You Get

- Mil-spec Curved Face Trigger (8620 hardened steel) – already cut/milled.
- "Trigger aesthetic style" subject to change based on availability but dimensions function and feel is same as image. Meaning flat trigger orders will get flat triggers. Curved will get Curved.
- Safety Cam (D2 Tool steel)
- Magic Lever (D2 Tool steel)
- Safety Detent Pin

You May Need Based On Your Set Up

- Full Auto rated BCG.
- Typically a mil-spec H2 buffer. Varies based on gas length and spring
- Proper setup of the Super Safety system requires attention to buffer selection, receiver geometry, and bolt carrier design. When correctly configured, the system supports full cyclic reliability and improved performance.

Description

Atrius Forced Reset Selector - Super Selektor Trigger

This item can be back ordered if needed.

The most robust solution on the market that enables the user to have 3 positions; SAFE, SEMI (Traditional) and FULL-SEMI. This Forced Reset Selector (FRS) is compatible with mil-spec AR15 (chambered in .223/5.56/.300 BLK) fire control groups and no modifications required. The Atrius FORCED RESET SELECTOR (Single) isn't just a safety, it's an advantage.

HOW TO ENSURE RELIABLE OPERATION:

- This product was designed for mil-spec triggers that do not have a relief cut (that means the rear of the bottom half of the trigger – not the hammer, must be completely squared off. No u-notch.)
- Your AR-15 lower receiver must have an FA Pocket OR Low Shelf
- You must use an FA bolt carrier group
- It is strongly recommended to only use an H2 or H3 buffer weight

**Introducing the AS Designs ARC-Fire V2 Ambi Kit (0° - 45° - 90°) Active Reset Clutch Technology for Maximum Firepower**

V2 DIFFERENCES

- DIFFERENT SELECTOR ORIENTATIONS AVAILABLE

- SMOOTHER DETENT TRACK

- LARGER CAM SURFACES

- COMES STOCK WITH MILSPEC SELECTORS (PICTURED)

We're proud to unveil the ARC-Fire V2, the latest innovation from AS Designs - a cutting-edge ambidextrous selector trigger system featuring our patent-pending Active Reset Clutch (ARC) technology. Designed to dramatically increase your firearm's rate of fire without compromising control or compliance, the ARC-Fire forces the trigger to reset immediately after each shot, enabling rapid, precise follow-up shots - with one round per action of the trigger, every time.

**Built for Speed. Designed for Control.**

*Multi-Platform Compatibility:* Engineered to support over 10 of the most widely used firearm platforms, with more on the horizon. (AR15, JAKL, MP5, MCX, MPX, SCAR, BRN-180, G3, AP53, UMP, STRIBOG, DISSENT, and more to be added soon)

*Ambidextrous Selector:* Fully ambi design provides fast, intuitive access for both right- and left-handed shooters.

*Three-Position Control:* Selector positions include Safe, Semi, and ARC, putting enhanced speed and performance at your fingertips.

Description

Partisan Triggers Disruptor AR-15 FRT 3 Position Drop In Forced Reset Trigger

Now Know As The Triggered Company!

The **Partisan Disruptor** is a forced reset trigger engineered for shooters who demand speed, precision, and reliability without complicated installation. Unlike a Super Safety, the Partisan Disruptor is a true, direct drop-in replacement trigger, requiring **no modification, gunsmithing, or fitting**. Installation is fast, straightforward, and hassle-free.

**UPC**: 083456001012

Designed with performance and control in mind, the Partisan Disruptor features a **three-position safety selector** with **Safe**, **Semi-Automatic**, and **Enhanced Semi-Automatic** modes. This allows shooters to tailor their shooting experience while maintaining consistent operation and dependable safety.

Whether you're building a duty-grade rifle or upgrading an existing platform, the Partisan Disruptor delivers a responsive, confident trigger feel backed by extensive durability testing.

81.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '784 Patent.

82.     On information and belief, Defendant also contributes to the infringement of the '784 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Super Safety, Atrius Selector, and ARC-Fire, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '784 Patent.

83.     Defendant has engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information

and belief, Defendant knowns or should have known that its actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '784 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '784 Patent.

84.     By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

85.     By its actions, Defendant's infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

86.     By its actions, Defendant's infringement of the '784 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

87.     Defendant's infringement of the '784 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

88.     Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

89.     Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III — INFRINGEMENT OF THE '538 PATENT

90.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

91.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '538 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '538 patent. Such unlicensed products include the Super Safety.

92.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '538 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

93.     An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '538 Patent is illustrated in the chart attached as Exhibit Q.

94.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '538 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety while selling products. One example of this is the promotional material found on Defendant's website  https://www.combatarmory.com/frt-super-safety/that informs customers to install the Super Safety into an AR15:

29

Description

Super Safety FLAT Face Trigger Kit D2 Steel – Active Reset Trigger For AR-15 FRT

You Get

- Mil-spec Curved Face Trigger (8620 hardened steel) – already cut/milled.
- "Trigger aesthetic style" subject to change based on availability but dimensions function and feel is same as image. Meaning flat trigger orders will get flat triggers. Curved will get Curved.
- Safety Cam (D2 Tool steel)
- Magic Lever (D2 Tool steel)
- Safety Detent Pin

You May Need Based On Your Set Up

- Full Auto rated BCG.
- Typically a mil-spec H2 buffer. Varies based on gas length and spring
- Proper setup of the Super Safety system requires attention to buffer selection, receiver geometry, and bolt carrier design. When correctly configured, the system supports full cyclic reliability and improved performance.

95.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '538 Patent.

96.     On information and belief, Defendant also contributes to the infringement of the '538 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Super Safety, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '538 Patent.

97.     Defendant has engaged in egregious infringement behavior with knowledge of the '538 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '538 Patent and that the '538 Patent is valid at least through the service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '538 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high

30

likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '538 Patent.

98.     By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '538 Patent pursuant to 35 U.S.C. § 271.

99.     By its actions, Defendant's infringement of the '538 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

100.    By its actions, Defendant's infringement of the '538 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

101.    Defendant's infringement of the '538 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

102.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

103.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT IV — INFRINGEMENT OF THE '159 PATENT

104.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

105.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things,

making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '159 patent. Such unlicensed products include the Super Safety, Atrius Selector, and ARC-Fire.

106. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

107. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart attached as Exhibit R.

108. An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart attached as Exhibit S.

109. An exemplary comparison of the ARC-Fire, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart attached as Exhibit T.

110. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '159 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety, Atrius Selector, and ARC-Fire while selling products. One example of this is the promotional material found on Defendant's website https://www.combatarmory.com/frt-super-safety/ that informs customers to install the Infringing Devices into an AR15:

32

Description

Super Safety FLAT Face Trigger Kit D2 Steel – Active Reset Trigger For AR-15 FRT

You Get

- Mil-spec Curved Face Trigger (8620 hardened steel) – already cut/milled.
- "Trigger aesthetic style" subject to change based on availability but dimensions function and feel is same as image. Meaning flat trigger orders will get flat triggers. Curved will get Curved.
- Safety Cam (D2 Tool steel)
- Magic Lever (D2 Tool steel)
- Safety Detent Pin

You May Need Based On Your Set Up

- Full Auto rated BCG.
- Typically a mil-spec H2 buffer. Varies based on gas length and spring
- Proper setup of the Super Safety system requires attention to buffer selection, receiver geometry, and bolt carrier design. When correctly configured, the system supports full cyclic reliability and improved performance.

Description

Atrius Forced Reset Selector - Super Selektor Trigger

This item can be back ordered if needed.

The most robust solution on the market that enables the user to have 3 positions; SAFE, SEMI (Traditional) and FULL-SEMI. This Forced Reset Selector (FRS) is compatible with mil-spec AR15 (chambered in .223/5.56/.300 BLK) fire control groups and no modifications required. The Atrius FORCED RESET SELECTOR (Single) isn't just a safety, it's an advantage.

**HOW TO ENSURE RELIABLE OPERATION:**

- This product was designed for mil-spec triggers that do not have a relief cut (that means the rear of the bottom half of the trigger - not the hammer, must be completely squared off. No u-notch.)
- Your AR-15 lower receiver must have an FA Pocket OR Low Shelf
- You must use an FA bolt carrier group
- It is strongly recommended to only use an H2 or H3 buffer weight

## Introducing the AS Designs ARC-Fire V2 Ambi Kit (0° - 45° - 90°) Active Reset Clutch Technology for Maximum Firepower

**V2 DIFFERENCES**

**- DIFFERENT SELECTOR ORIENTATIONS AVAILABLE**

**- SMOOTHER DETENT TRACK**

**- LARGER CAM SURFACES**

**- COMES STOCK WITH MILSPEC SELECTORS (PICTURED)**

We're proud to unveil the ARC-Fire V2, the latest innovation from AS Designs - a cutting-edge ambidextrous selector trigger system featuring our patent-pending Active Reset Clutch (ARC) technology. Designed to dramatically increase your firearm's rate of fire without compromising control or compliance, the ARC-Fire forces the trigger to reset immediately after each shot, enabling rapid, precise follow-up shots - with one round per action of the trigger, every time.

## Built for Speed. Designed for Control.

*Multi-Platform Compatibility:* Engineered to support over 10 of the most widely used firearm platforms, with more on the horizon. (AR15, JAKL, MP5, MCX, MPX, SCAR, BRN-180, G3, AP53, UMP, STRIBOG, DISSENT, and more to be added soon)

*Ambidextrous Selector:* Fully ambi design provides fast, intuitive access for both right- and left-handed shooters.

*Three-Position Control:* Selector positions include Safe, Semi, and ARC, putting enhanced speed and performance at your fingertips.

Description

Partisan Triggers Disruptor AR-15 FRT 3 Position Drop In Forced Reset Trigger

**Now Know As** The Triggered Company!

The **Partisan Disruptor** is a forced reset trigger engineered for shooters who demand speed, precision, and reliability without complicated installation. Unlike a Super Safety, the Partisan Disruptor is a true, direct drop-in replacement trigger, requiring **no modification, gunsmithing, or fitting**. Installation is fast, straightforward, and hassle-free.

**UPC**: 083456001012

Designed with performance and control in mind, the Partisan Disruptor features a **three-position safety selector** with **Safe**, **Semi-Automatic**, and **Enhanced Semi-Automatic** modes. This allows shooters to tailor their shooting experience while maintaining consistent operation and dependable safety.

Whether you're building a duty-grade rifle or upgrading an existing platform, the Partisan Disruptor delivers a responsive, confident trigger feel backed by extensive durability testing.

111.   On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '159 Patent.

112.   On information and belief, Defendant also contributes to the infringement of the '159 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Super Safety, Atrius Selector, and ARC-Fire, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '159 Patent.

113.   Defendant has engaged in egregious infringement behavior with knowledge of the '159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '159 Patent and that the '159 Patent is valid at least through the service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '159 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '159 Patent.

34

114. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '159 Patent pursuant to 35 U.S.C. § 271.

115. By its actions, Defendant's infringement of the '159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

116. By its actions, Defendant's infringement of the '159 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

117. Defendant's infringement of the '159 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

118. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

119. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT V — INFRINGEMENT OF THE '223 PATENT

120. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

121. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '223 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed

35

products in a manner that infringes the '223 patent. Such unlicensed products include the Disruptor.

122. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '223 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

123. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 4 of the '223 Patent is illustrated in the chart attached as Exhibit U.

124. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '223 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products. One example of this is the promotional material found on Defendant's website https://www.combatarmory.com/frt-super-safety/ that informs customers to install the Disruptor into an AR15:

**Description**

Partisan Triggers Disruptor AR-15 FRT 3 Position Drop In Forced Reset Trigger

*Now Know As* The Triggered Company!

The **Partisan Disruptor** is a forced reset trigger engineered for shooters who demand speed, precision, and reliability without complicated installation. Unlike a Super Safety, the Partisan Disruptor is a true, direct drop-in replacement trigger, requiring **no modification, gunsmithing, or fitting**. Installation is fast, straightforward, and hassle-free.

**UPC**: 083456001012

Designed with performance and control in mind, the Partisan Disruptor features a **three-position safety selector** with **Safe**, **Semi-Automatic**, and **Enhanced Semi-Automatic** modes. This allows shooters to tailor their shooting experience while maintaining consistent operation and dependable safety.

Whether you're building a duty-grade rifle or upgrading an existing platform, the Partisan Disruptor delivers a responsive, confident trigger feel backed by extensive durability testing.

125. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 4 of the '223 Patent.

36

126. On information and belief, Defendant also contributes to the infringement of the '223 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Disruptor, such as the as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '223 Patent.

127. Defendant has engaged in egregious infringement behavior with knowledge of the '223 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '223 Patent and that the '223 Patent is valid at least through the service of the [LETTER/COMPLAINT]. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '223 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '223 Patent.

128. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '223 Patent pursuant to 35 U.S.C. § 271.

129. By its actions, Defendant's infringement of the '223 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

130. By its actions, Defendant's infringement of the '223 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

131. Defendant's infringement of the '223 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

132. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

133. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VI — INFRINGEMENT OF THE '003 PATENT

134. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

135. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '003 patent. Such unlicensed products include the Disruptor.

136. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

137. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 4 of the '003 Patent is illustrated in the chart attached as Exhibit V.

138. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '003 patent.

Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products. One example of this is the promotional material found on Defendant's website https://www.combatarmory.com/frt-super-safety/ that informs customers to install the Disruptor into an AR15:

Description

Partisan Triggers Disruptor AR-15 FRT 3 Position Drop In Forced Reset Trigger

**Now Know As** The Triggered Company!

The **Partisan Disruptor** is a forced reset trigger engineered for shooters who demand speed, precision, and reliability without complicated installation. Unlike a Super Safety, the Partisan Disruptor is a true, direct drop-in replacement trigger, requiring **no modification, gunsmithing, or fitting**. Installation is fast, straightforward, and hassle-free.

**UPC**: 083456001012

Designed with performance and control in mind, the Partisan Disruptor features a **three-position safety selector** with **Safe**, **Semi-Automatic**, and **Enhanced Semi-Automatic** modes. This allows shooters to tailor their shooting experience while maintaining consistent operation and dependable safety.

Whether you're building a duty-grade rifle or upgrading an existing platform, the Partisan Disruptor delivers a responsive, confident trigger feel backed by extensive durability testing.

139.    On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 4 of the '003 Patent.

140.    On information and belief, Defendant also contributes to the infringement of the '003 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '003 Patent.

141.    Defendant has engaged in egregious infringement behavior with knowledge of the '003 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '003 Patent and that the '003 Patent is valid at least through the

39

service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '003 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '003 Patent.

142.    By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '003 Patent pursuant to 35 U.S.C. § 271.

143.    By its actions, Defendant's infringement of the '003 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

144.    By its actions, Defendant's infringement of the '003 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

145.    Defendant's infringement of the '003 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

146.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

147.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VII — INFRINGEMENT OF THE '336 PATENT

148.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

40

149.   In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '336 patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '336 patent.  Such unlicensed products include the Disruptor.

150.   On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '336 patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents.

151.   An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 3 of the '336 Patent is illustrated in the chart attached as Exhibit W.

152.   On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '336 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products. One example of this is the promotional material found on Defendant's website https://www.combatarmory.com/frt-super-safety/ that informs customers to install the Disruptor into an AR15:

Description

Partisan Triggers Disruptor AR-15 FRT 3 Position Drop In Forced Reset Trigger

Now Know As The Triggered Company!

The **Partisan Disruptor** is a forced reset trigger engineered for shooters who demand speed, precision, and reliability without complicated installation. Unlike a Super Safety, the Partisan Disruptor is a true, direct drop-in replacement trigger, requiring **no modification, gunsmithing, or fitting**. Installation is fast, straightforward, and hassle-free.

**UPC**: 083456001012

Designed with performance and control in mind, the Partisan Disruptor features a **three-position safety selector** with **Safe**, **Semi-Automatic**, and **Enhanced Semi-Automatic** modes. This allows shooters to tailor their shooting experience while maintaining consistent operation and dependable safety.

Whether you're building a duty-grade rifle or upgrading an existing platform, the Partisan Disruptor delivers a responsive, confident trigger feel backed by extensive durability testing.

153. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 3 of the '336 Patent.

154. On information and belief, Defendant also contributes to the infringement of the '336 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '336 Patent.

155. Defendant has engaged in egregious infringement behavior with knowledge of the '336 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '336 Patent and that the '336 Patent is valid at least through the service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '336 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '336 Patent.

156. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '336 Patent pursuant to 35 U.S.C. § 271.

157. By its actions, Defendant's infringement of the '336 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

158. By its actions, Defendant's infringement of the '336 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

159. Defendant's infringement of the '336 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

160. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VIII — INFRINGEMENT OF THE '807 PATENT

161. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

162. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '807 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '807 patent. Such unlicensed products include the Disruptor.

163. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '807 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

43

164.     An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 1 of the '807 Patent is illustrated in the chart attached as Exhibit X.

165.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '807 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products. One example of this is the promotional material found on Defendant's website https://www.combatarmory.com/frt-super-safety/ that informs customers to install the Disruptor into an AR15:

Description

Partisan Triggers Disruptor AR-15 FRT 3 Position Drop In Forced Reset Trigger

**Now Know As** The Triggered Company!

The **Partisan Disruptor** is a forced reset trigger engineered for shooters who demand speed, precision, and reliability without complicated installation. Unlike a Super Safety, the Partisan Disruptor is a true, direct drop-in replacement trigger, requiring **no modification, gunsmithing, or fitting**. Installation is fast, straightforward, and hassle-free.

**UPC**: 083456001012

Designed with performance and control in mind, the Partisan Disruptor features a **three-position safety selector** with **Safe**, **Semi-Automatic**, and **Enhanced Semi-Automatic** modes. This allows shooters to tailor their shooting experience while maintaining consistent operation and dependable safety.

Whether you're building a duty-grade rifle or upgrading an existing platform, the Partisan Disruptor delivers a responsive, confident trigger feel backed by extensive durability testing.

166.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '807 Patent.

167.     On information and belief, Defendant also contributes to the infringement of the '807 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '807 Patent.

44

168.    Defendant has engaged in egregious infringement behavior with knowledge of the '807 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '807 Patent and that the '807 Patent is valid at least through the service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '807 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '807 Patent.

169.    By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '807 Patent pursuant to 35 U.S.C. § 271.

170.    By its actions, Defendant's infringement of the '807 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

171.    By its actions, Defendant's infringement of the '807 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

172.    Defendant's infringement of the '807 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

173.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

174.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

45

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT IX — INFRINGEMENT OF THE '403 PATENT

175.   Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

176.   In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '403 patent. Such unlicensed products include the Super Safety, Atrius Selector, Disruptor, and ARC-Fire.

177.   On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents.

178.   An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart attached as Exhibit Y.

179.   An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart attached as Exhibit Z.

180.   An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart attached as Exhibit AA.

181.   An exemplary comparison of the ARC-Fire, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart attached as Exhibit AB.

182.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '403 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Devices while selling products. One example of this is the promotional material found on Defendant's website   https://www.combatarmory.com/frt-super-safety/ that informs customers to install the Infringing Devices into an AR15:

Description

Super Safety FLAT Face Trigger Kit D2 Steel – Active Reset Trigger For AR-15 FRT

You Get

- Mil-spec Curved Face Trigger (8620 hardened steel) – already cut/milled.
- "Trigger aesthetic style" subject to change based on availability but dimensions function and feel is same as image. Meaning flat trigger orders will get flat triggers. Curved will get Curved.
- Safety Cam (D2 Tool steel)
- Magic Lever (D2 Tool steel)
- Safety Detent Pin

You May Need Based On Your Set Up

- Full Auto rated BCG.
- Typically a mil-spec H2 buffer. Varies based on gas length and spring
- Proper setup of the Super Safety system requires attention to buffer selection, receiver geometry, and bolt carrier design. When correctly configured, the system supports full cyclic reliability and improved performance.

Description

Atrius Forced Reset Selector - Super Selektor Trigger

This item can be back ordered if needed.

The most robust solution on the market that enables the user to have 3 positions; SAFE, SEMI (Traditional) and FULL-SEMI. This Forced Reset Selector (FRS) is compatible with mil-spec AR15 (chambered in .223/5.56/.300 BLK) fire control groups and no modifications required. The Atrius FORCED RESET SELECTOR (Single) isn't just a safety, it's an advantage.

HOW TO ENSURE RELIABLE OPERATION:

- This product was designed for mil-spec triggers that do not have a relief cut (that means the rear of the bottom half of the trigger - not the hammer, must be completely squared off. No u-notch.)
- Your AR-15 lower receiver must have an FA Pocket OR Low Shelf
- You must use an FA bolt carrier group
- It is strongly recommended to only use an H2 or H3 buffer weight

**Introducing the AS Designs ARC-Fire V2 Ambi Kit (0° - 45° - 90°) Active Reset Clutch Technology for Maximum Firepower**

V2 DIFFERENCES

- DIFFERENT SELECTOR ORIENTATIONS AVAILABLE

- SMOOTHER DETENT TRACK

- LARGER CAM SURFACES

- COMES STOCK WITH MILSPEC SELECTORS (PICTURED)

We're proud to unveil the ARC-Fire V2, the latest innovation from AS Designs - a cutting-edge ambidextrous selector trigger system featuring our patent-pending Active Reset Clutch (ARC) technology. Designed to dramatically increase your firearm's rate of fire without compromising control or compliance, the ARC-Fire forces the trigger to reset immediately after each shot, enabling rapid, precise follow-up shots - with one round per action of the trigger, every time.

**Built for Speed. Designed for Control.**

*Multi-Platform Compatibility:* Engineered to support over 10 of the most widely used firearm platforms, with more on the horizon. (AR15, JAKL, MP5, MCX, MPX, SCAR, BRN-180, G3, AP53, UMP, STRIBOG, DISSENT, and more to be added soon)

*Ambidextrous Selector:* Fully ambi design provides fast, intuitive access for both right- and left-handed shooters.

*Three-Position Control:* Selector positions include Safe, Semi, and ARC, putting enhanced speed and performance at your fingertips.

Description

Partisan Triggers Disruptor AR-15 FRT 3 Position Drop In Forced Reset Trigger

Now Know As The Triggered Company!

The **Partisan Disruptor** is a forced reset trigger engineered for shooters who demand speed, precision, and reliability without complicated installation. Unlike a Super Safety, the Partisan Disruptor is a true, direct drop-in replacement trigger, requiring **no modification, gunsmithing, or fitting**. Installation is fast, straightforward, and hassle-free.

**UPC**: 083456001012

Designed with performance and control in mind, the Partisan Disruptor features a **three-position safety selector** with **Safe**, **Semi-Automatic**, and **Enhanced Semi-Automatic** modes. This allows shooters to tailor their shooting experience while maintaining consistent operation and dependable safety.

Whether you're building a duty-grade rifle or upgrading an existing platform, the Partisan Disruptor delivers a responsive, confident trigger feel backed by extensive durability testing.

183.    On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 38 of the '403 Patent.

184.    On information and belief, Defendant also contributes to the infringement of the '403 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Infringing Devices, such as the can and lever arm or the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '403 Patent.

185.    Defendant has engaged in egregious infringement behavior with knowledge of the '403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information

48

and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '403 Patent and that the '403 Patent is valid at least through the service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '403 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '403 Patent.

186. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '403 Patent pursuant to 35 U.S.C. § 271.

187. By its actions, Defendant's infringement of the '403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

188. By its actions, Defendant's infringement of the '403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

189. Defendant's infringement of the '403 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

190. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

191. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT X – FEDERAL TRADEMARK INFRINGEMENT

### 15 U.S.C. § 1114(1)

192. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

193. Rare Breed is exclusive licensee of all substantial rights in the FRT Marks in connection with firearm triggers.

194. The federal trademark registrations for the FRT Marks as detailed above are in full force and effect. Plaintiff Rare Breed owns all substantial rights in and to enforce these federal trademark registrations.

195. The FRT Marks are inherently distinctive and have acquired significant goodwill in the marketplace through Rare Breed's continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT Marks have become uniquely associated in the minds of consumers and the trade with Rare Breed.

196. The reputation Rare Breed has built in the FRT Marks is of great value to Rare Breed.

197. Rare Breed's use of and substantial rights in the FRT Marks predate any use by Defendant of FRT.

198. Defendant is wrongfully using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

199. Defendant's use of the FRT Marks was and is without Rare Breed's consent. Such unauthorized use by Defendant is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendant's products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

200. Defendant's unlawful acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Rare Breed for which Rare Breed has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Rare Breed.

201. Rare Breed is entitled to injunctive relief prohibiting Defendant from using the FRT Marks and any mark confusingly similar to the FRT Marks.

202. Upon information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT Marks, and has caused Rare Breed monetary damage in an amount to be determined at trial.

## COUNT XI — FALSE DESIGNATION OF ORIGIN

### 15 U.S.C. § 1125(A)

203. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

204. Plaintiff Rare Breed owns substantial rights in the distinctive FRT Marks in connection with firearm triggers through its continuous and substantially exclusive use of the FRT Marks since at least as early as 2020, which is well before any use of FRT by Defendant.

205. Rare Breed's common law rights in the FRT Marks predate Defendant's infringing use of FRT and any other confusingly similar name or mark comprised of or containing FRT.

206. Defendant is using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

207. Defendant's actions described above constitute use of a false designation of origin that wrongfully and falsely designates the origin of Defendant's goods and services and is likely to cause confusion or mistake and/or to deceive as to affiliation, connection, or association or as

51

to the origin, sponsorship, or approval of Defendant's goods by Rare Breed. These actions constitute a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

208.    Defendant's unlawful acts, which were committed and continue to be committed with full knowledge of Rare Breed's prior rights in the FRT Marks, are knowing, willful, and done in bad faith.

209.    Defendants' acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Rare Breed for which Rare Breed has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

210.    entitled to injunctive relief prohibiting Defendant from using the FRT Marks or any other mark confusingly similar to the FRT Marks.

211.    Upon information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT Marks, and has caused Rare Breed monetary damage in an amount to be determined at trial.

## COUNT XII – COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

212.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

213.    As described above, Rare Breed owns substantial exclusive rights in the distinctive FRT Marks in connection with firearm triggers through its continuous use of the marks since at least as early 2020, prior to any use of FRT by Defendant.

214.    Rare Breed's common law rights in the FRT Marks predate Defendant's infringing use of FRT and/or other confusingly similar marks comprised of or containing FRT.

215.    Defendant is using FRT as a source identifier in US commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

216.    Defendant's use of FRT was and is without Rare Breed's consent. Such unauthorized use by Defendant is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendant's goods and services. As such, Defendant's acts constitute trademark infringement and unfair competition under common law.

217.    Defendant's unlawful acts, which were committed and continue to be committed with full knowledge of Rare Breed's prior common law rights in the FRT Marks are knowing, willful, and done in bad faith.

218.    Defendant's acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Rare Breed for which it has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Rare Breed's.

219.    Rare Breed is entitled to injunctive relief prohibiting Defendant from using FRT or any other mark confusingly similar to the FRT Marks.

220.    Upon information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT mark, and has caused Rare Breed monetary damage in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgement against Defendant as follows:

a.      Each of the Asserted Patents has been and continues to be infringed by Defendant;

b.      Defendant's infringement of each of the Asserted Patents has been, and continues to be, willful;

c.      Each of the Asserted Patents is enforceable and not invalid;

d.      That Defendant willfully infringed Rare Breed's registered FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1114;

e.      That Defendant committed willful acts of false designation of origin through its unauthorized use of the FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a);

f.      A preliminary injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (i) infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case; (ii) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (a) in association with firearm triggers or any related products; (b) in any other manner that creates confusion or is likely to create confusion with Rare Breed or Rare Breed's FRT Marks; (c) that in any way constitutes unfair competition with Plaintiffs; or (iii) other such equitable relief as the Court determines is warranted;

g.      A permanent injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (i) infringement or contributing to the infringement of each of the Asserted Patents; (ii) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (a) in association with firearm triggers or any related products; (b) in any other manner that creates confusion or is likely to create confusion

with Rare Breed or Rare Breed's FRT Marks; (c) that in any way constitutes unfair competition with Plaintiffs; or (iii) other such equitable relief as the Court determines is warranted;

h.      Consistent with Paragraph (g), order Defendant to (a) remove from display any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FRT Marks or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term, including from all Internet webpages and social media accounts within Defendant's custody or control; and (b) deliver to the Court for destruction, or to show proof of destruction of, any and all physical advertisements and marketing, promotional materials, and sales materials comprising, bearing, or displaying the term "FRT" or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term;

i.      An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

j.      An award of all other damages permitted by 35 U.S.C. § 284 and 15 U.S.C. § 1117(a), including increased damages up to three times the amount of compensatory damages found;

k.      An award of all profits received by Defendant from sales and revenues of any kind made as a result of its trademark infringement and unfair competition;

l.      An award of all damages sustained by Rare Breed as a result of Defendant's infringement and unfair competition, including ascertainable damages, the costs incurred by Plaintiffs for corrective advertising, the costs for this action, and Plaintiffs' reasonable attorneys' fees;

m.      A finding that this action is an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117 and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

n.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: July 23, 2026                        Respectfully submitted,

                                            */s/ John A. Hubbard*
                                            John A. Hubbard (P39624)
                                            **Hubbard Snitchler & Parzianello PLC**
                                            Attorney for Plaintiffs
                                            801 W. Ann Arbor Trail, Suite 240
                                            Plymouth, MI 48170
                                            (313) 672-7300
                                            jhubbard@hspplc.com

                                            Glenn D. Bellamy (Pro Hac Vice forthcoming)
                                            **WOOD HERRON & EVANS LLP**
                                            600 Vine Street, Suite 2800
                                            Cincinnati OH 45202
                                            E-mail: gbellamy@whe-law.com
                                            Tel: (513) 707-0243
                                            Fax: (513) 241-6234

                                            Matthew A. Colvin (Pro Hac Vice forthcoming)
                                            Texas Bar No. 24087331
                                            Carl E. Bruce (Pro Hac Vice forthcoming)
                                            Texas Bar No. 24036278
                                            **FISH & RICHARDSON P.C.**
                                            1717 Main Street, Suite 5000
                                            Dallas, TX 75201
                                            E-mail: colvin@fr.com
                                             bruce@fr.com

56

Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff (Pro Hac Vice forthcoming)
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1001 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

*Attorneys for Plaintiffs*
*ABC IP, LLC, and Rare Breed Triggers, Inc.*

57